# Carney *v.* The State.

*Indictment for Seduction.*

1. *Seduction; constituents of offense.*—To authorize a conviction for the seduction of an unmarried woman (Code, § 4188; Sess. Acts 1880–81, p. 48,) the jury must be satisfied beyond a reasonable doubt that the seduction was accomplished under promise of marriage, or by other means specified in the statute, one or more; that the relation of cause and effect existed between the alleged means and the accomplished fact.

2. *To that witness may testify.*—A witness, testifying to the defendant's behavior or conduct towards the woman alleged to have been seduced by him, can not be permitted to state that he "*acted towards her as a suitor,*" nor that he "*acted towards her as a lover;*" these being inferential facts to be found by the jury, and not such a "short-hand rendering of the facts" as a witness may state.

3. *Examination of witness; interruption by court.*—While a witness is under examination on the stand, it is alike the duty of the presiding judge to protect him, if unfairly dealt by, and to abstain from interference so long as the examination is properly conducted; and this court can not, on error or appeal, revise the exercise of this discretionary power, when the record does not show that any injury could have resulted from the interference.

4. *Charge as to reasonable doubt.*—A charge to the jury, in a criminal case, in these words: "In making up their verdict, and after having considered all the evidence, if the jury entertain a reasonable doubt as to the truth of any part of the evidence, they should give the defendant the benefit of that doubt, and discard all the evidence adverse to him, as to which they entertain such reasonable doubt, and give consideration to all that portion which is favorable to him, and as to which they have reasonable doubt, so that he may obtain the full benefit of every reasonable doubt; and if, after treating the entire evidence in this way, they entertain a reasonable doubt as to any material element of the offense, they should give the defendant the benefit of that doubt, and acquit him,"—"is too complicated to be given in charge to a jury, and asserts one proposition which is not sound."

From the City Court of Mobile.

Tried before the Hon. O. J. Semmes.

The defendant in this case was indicted for the seduction of Katie Nicholas, an unmarried woman; and being tried on issue joined in the plea of not guilty, was convicted, and sentenced to imprisonment in the penitentiary for the term of fifteen months. On the trial, as the bill of exceptions shows, the prosecutrix was examined as a witness for the State, and testified to her engagement to be married to the defendant, and to her criminal connection with him during their engagement; and in stating the circumstances attending their first criminal act,

[Carney v. The State.]

on the gallery of the house at which she was then living, on their return from a dance on the night of July 4th, 1883, said that the defendant took off her shoes for her, "and talked love, and said they were engaged to be married, and that she must do whatever he told her; and after this conversation he had sexual intercourse with her." On cross-examination, being questioned about the previous engagement of marriage and the circumstances attending it, she stated that, while walking together some months previously, the defendant asked her to marry him, and she promised to do so; that their engagement was mentioned again at the house of a friend; that their next conversation on the subject was "in the first part of the year 1883," while they were alone together on the gallery of the house, when he said, "Miss Katie, I am going to marry you," and she replied, "All right;" and that on. the next occasion, being the night of said July 4th, "the defendant just commenced the conversation by saying, 'Miss Katie, I am going to marry you.'" The bill of exceptions then proceeds: "Here, the court interrupted the examination, of its own motion, saying that the examination, up to this time, had been exclusively as to conversations about marriage, and it might confuse the witness; and that if there was any conversation preceding that about marriage, the witness might say that a conversation had taken place preceding the conversation about marriage, and then go on and tell it, if one did take place. To which interruption the defendant objected and excepted."

T. B. Judge, who was connected by marriage with the prosecutrix, and at whose house she lived while visited by the defendant, was examined as a witness for the State, and testified, in answer to questions by the solicitor," that he never saw anything in the conduct between the defendant and Katie Nicholas, tending to show any boldness or want of chastity on her part;" "that they were very intimate;" that the defendant "acted towards Katie Nicholas as a suitor;" that he "acted towards her as a lover;" that he (witness) "was a married man, and had been all along there under similar circumstances, and that the conduct of the parties looked that way to him." To each portion of this testimony, as shown by the quotation marks, the defendant objected, and duly excepted to its admission. Exceptions were also reserved to several other rulings on evidence, which require no special notice.

Among other charges in writing, the defendant asked the following: "2. In making up their verdict, and after having considered all the evidence, if the jury entertain a reasonable doubt as to the truth of any part of the evidence, they should give the defendant the benefit of that doubt, and discard all the evidence adverse to him, as to which they entertain such

[Carney v. The State.]

reasonable doubt, and give consideration to all that portion which is favorable to him, and as to which they have a reasonable doubt, so that he may obtain the full benefit of any reasonable doubt; and if, after treating the entire evidence in this way, they entertain a reasonable doubt as to any material element of the offense, they should give the defendant the benefit of that doubt, and acquit him." The court refused this charge, and the defendant excepted to the refusal.

G. L. SMITH, for the appellant.—(1.) The interruption of the prosecutrix by the court, during her cross-examination, was calculated to call her attention to the improbability of her story, and give her an opportunity to amend and qualify it, as she afterwards did; and to this extent it prejudiced the defendant. (2.) The several statements of the witness Judge, to the admission of which exceptions were reserved, were not the statements of facts, but the mere conclusions or opinions of the witness; and they ought not to have been received.—*Haines v. Brownlee*, 63 Ala. 276; *Pollock & Co. v. Gantt*, 69 Ala. 378; *Talladega Insurance Co. v. Peacock*, 67 Ala. 253; *Whizenant v. The State*, 71 Ala. 385; *Abbott, Downing & Co. v. Gillespie*, 75 Ala. 187; *National Bank v. Jeffries*, 73 Ala. 192; *Minniece v. Jeter*, 65 Ala. 230; *Tanner v. L. & N. Railroad Co.*, 60 Ala. 643; *Johnson v. The State*, 17 Ala. 618; *McAdory v. The State*, 59 Ala. 92; *Gassenheimer v. The State*, 52 Ala. 317. (3.) In arriving at the conclusion of guilt or innocence, the jury ought not to discard entirely any fact or circumstance, because inconclusive in itself; but, if, after having considered all the evidence together, and given to each part all the corroboration and support it is entitled to receive from the other parts, they entertain a reasonable doubt as to the truth of any part, they ought to give the prisoner the benefit of that doubt. Weak or inconclusive evidence, tending to prove the issue, may properly be considered, while false evidence should never be made the basis of a verdict.

E. L. RUSSELL, and B. B. BOONE, with THOS. N. McCLELLAN, Attorney-General, for the State.—(1.) There was no error in admitting the several statements of the witness Judge to which objection was made. Each was but a "short-hand rendering of the facts," to which a witness can not, as a general rule, testify more explicitly.—*Blackwell v. Hamilton*, 47 Ala. 472; *Polk v. The State*, 62 Ala. 237; *Railroad Co. v. McLendon*, 63 Ala. 266; *Blackman v. Johnson*, 35 Ala. 252; *Angell v. Rosenburg*, 12 Mich. 241; *Insurance Co. v. Mosely*, 8 Wallace, 404; *Tobin v. Shaw*, 45 Maine, 331; *Trelawney v. Colewan*, 2 Stark. 191; *McKee v. Nelson*, 4 Cowen, 355; Lawson on Expert and

[Carney v. The State.]

Opinion Evidence, 466; 1 Greenl. Ev. § 440; Whart. Ev. 612; 90 Indiana, 466; 72 Indiana, 167; 62 Indiana, 334; 69 Indiana, 108; 96 Indiana, 550: 71 Penn. St. 161; *Aurora v. Hillman*, 90 Ill. 66; 68 Maine, 279. (2.) The charges asked were properly refused.—*Scott v. Lloyd*, ·9 Peters, 418; 39 Wisc. 558; Abbott's Trial Briefs, 150; *Ming v. The State*, 73 Ala. 2.

STONE, C. J.—The defendant was indicted and convicted under section 4188 of the Code of 1876, as amended by act approved February 25th, 1881.—Sess. Acts, 1880--81, p. 48. The statute declares, that "Any man, who, by means of temptation, deceptions, arts, flattery, or a promise of marriage, seduces any unmarried female in this State, shall be deemed guilty of a felony," *etc.* The chief act by which the alleged seduction was accomplished in this case, was, as it is claimed the proof tends to show, a promise of marriage. The statute provides, that "no conviction shall be had under this section on the uncorroborated testimony of the female upon whom the seduction is charged" (to have been committed). In *Wilson v. The State*, 73 Ala. 527, 533, we said: "The essential elements of the offense, as it is described by the statute, are—first, the woman must be unmarried; second, she must be induced to a surrender of her chastity by a promise of marriage, or by the arts or deception of the man." These are two of the elements of the offense, which, to authorize conviction, must be shown with that measure of proof requisite in criminal cases. And the promise of marriage, arts, or deceptions, as the case may be, must sustain the relation to the accomplished purpose—the consummated offense—as cause to effect, or the case is not brought within the statute. We do not mean to say that, to sustain conviction, the alleged promise of marriage must be found by the jury to have been the sole moving inducement to the surrender of chastity charged to have been made; but that no conviction should be had, unless the jury are convinced beyond a reasonable doubt that there was a fall from virtue, and that that fall was brought about by defendant's "temptation, deceptions, arts, flattery, or promise of marriage," either one or more, or all of these co-operating to produce the result. This is what we mean when we say, the means or inducement employed must sustain the relation to the act accomplished, of cause to effect.— *Cunningham v. The State*, 73 Ala. 51.

Human emotions and human passions are not, in themselves, physical entities, susceptible of proof, as such. Like the at-mosphere, the wind, and some acknowledged forces in nature, they are seen only in the effects they produce. Pleasure, pain, joy, sorrow, peace, restlessness, happiness, misery, friendship,

[Carney v. The State.]

enmity, anger, are of this class. So, tenderness, sympathy, rudeness, harshness, contempt, disgust, the outcrop of emotional *status*, can not, in their constitution, be made so far physical facts, or entities, as to become the subject· of intelligible word description. They are proved by what is called opinion evidence. Not the mere unreasoning opinion, or arbitrary conclusion of the witness, but his opinion based on experience and observation of the conduct, conversation, and facial expression of others, in similar emotional conditions. Facial expression and vocal intonation are so legible, as that brutes comprehend them; and yet human language has no terms by which they can be dissected, and explained in detail. The reasoning in such cases is *a posteriori*, and the major proposition is but the sum or resultant of every one's experience and observation. The following authorities will elucidate the rule we have been attempting to explain. Possibly some of them carry the principle too far.—*S. & N. R. R. Co. v. Mc-Lendon*, 63 Ala. 266; *Bennett v. Fail*, 26 Ala. 605; *Wilkinson v. Mosely*, 30 Ala. 562; *Fountain v. Brown*, 38 Ala. 72; *Barker v. Coleman*, 35 Ala. 221; *Stone v. Watson*, 37 Ala. 279; 1 Greenl. Ev. §§ 102, 440; Lawson's Expert & Opinion Ev. 466; 2 Phil. Ev. (4th Ed.), 182; *Ins. Co. v. Mosely*, 8 Wall. 397; *Trelawney v. Colman*, 2 Stark. Rep. 191; *McKee v. Nelson*, 4 Cow. 355; *Tobin v. Shaw*, 45 Me. 331. See, also, the numerous authorities on the brief of counsel.

The rule, however, must not be carried too far. It is born of necessity, and it must end with the necessity which calls it into being. It allows this concrete mode of proving emotional *status*, but it does not allow proof of what such emotional *status* will generally or probably lead to. That is an inferential conclusion, which must be left to the determination of the trying body. In a trial for murder, it is competent to prove the defendant was *at enmity* with the deceased, or the contrary. It would not be competent to·prove that the relations of the parties were such that they would or would not be likely to cause one to slay the other. Nor would it be permissible to prove in the concrete, or as opinion evidence, that the accused acted like a person who desired to slay his adversary. That would be a question for the jury to determine on all the evidence. We might offer other illustrations.—*Richards v. Richards*, 37 Penn. St. 225; *Johnson v. Ballew*, 2 Por. 29.

The witness Judge was allowed to testify, that " defendant acted towards Katie Nicholas as a suitor." To this defendant excepted. A suitor, in the sense here employed, is " one who solicits a woman in marriage." We think this was not a subject for expert, or opinion evidence. It is not every lover who solicits marriage. Nor do we think that human experience and

[Carney v. The State.]

observation can furnish a rule for determining when social relations between persons of the opposite sex indicate matrimonial intentions. Human dispositions, and habits of social intercourse, are too variable for that. The City Court erred in admitting the evidence pointed out above.

Nor do we think this witness should have been allowed to give his opinion that the accused "acted towards Katie Nicholas as a lover." Love between the sexes has different constituents from those found in mere friendship. It is itself very variable in its constitution. It may be refined, having elevated aims, or it may be gross, in which baser desires predominate. Still, to discriminate between these, it would seem, would be too difficult and uncertain in its exercise to allow it to become a factor in judicial administration. In 1 Whar. Ev. § 510, it is said : "An inference necessarily involving certain facts, may be stated without the facts." He adds : "When the facts are not necessarily involved in the inference (e. g., when the inference may be sustained upon either of several distinct phases of fact, neither of which it necessarily involves), then the facts must be stated. In other words, when the opinion is the mere short-hand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based." We do not think a witness should be allowed to testify, from a mere observance of conduct, demeanor, or social intercourse, that the one acted towards the other as a lover. See 1 Whar. Ev. § 509.

The suggestion made by the presiding judge to the witness Katie Nicholas, while under cross-examination, can scarcely be reviewed here with safety. It is alike the duty of the court to protect a witness unduly dealt by, and to abstain from interference when the examination is properly conducted. Much must be left to the discretion of the judge presiding. We are unable to perceive that any injury was done in this case by the remark of the presiding judge.

The rulings on the offer made to discredit Mrs. Kemper will not arise again in the form here presented, and we need not consider them.

The second charge asked by defendant's counsel was rightly refused. It is too complicated to be given in charge to a jury, and asserts one proposition which is not sound.

The other rulings are free from error.

Reversed and remanded.